Gloria DELESDERNIER, wife of Clay N. Gerald, Plaintiff-Appellant,

v.

Louis B. PORTERIE, et al., Defendants-Appellees.

No. 80–3564.

United States Court of Appeals, Fifth Circuit.

Jan. 20, 1982.

Roger R. Roy, New Orleans, La., for plaintiff-appellant.

H. Martin Hunley, Jr., New Orleans, La., for defendants-appellees.

Before POLITZ and RANDALL, Circuit Judges, and GORDON *, District Judge.

RANDALL, Circuit Judge:

This case involves a suit for malpractice arising out of defendants' representation of plaintiff in a protracted litigation of land claims. The malpractice litigation itself has gone through two full trials and plaintiff now seeks reversal and a third trial. For the reasons stated below, we affirm.

In March of 1957, plaintiff Gloria Delesdernier employed defendant Louis Porterie and his law firm, then known as Duke, Porterie & Davidson, to represent her in connection with her claims to various properties located in Plaquemines Parish, Louisiana. This litigation continued under Porterie's direction for over fifteen years. Delesdernier assisted in the preparation of her case; in order to facilitate the work on the litigation, she was given a key to Porterie's office and the case file was kept in a special place where she could work on the file after hours.

A trial date was finally set for October 16, 1972. Porterie consistently made it clear that he wanted Delesdernier to settle the case instead of going to trial, but Delesdernier refused. Finally, Porterie informed Delesdernier in a letter, dated August 11, 1972, that he refused to proceed any further on her behalf and that he was resigning from the case. The trial date being only two months off, Delesdernier picked up the case files from Porterie's office using the key she had been given and began representing herself in the litigation. Porterie thereafter wrote a letter to the plaintiff on August 17, 1972, accusing her of illegally removing the files from his office. On August 13, 1973, Delesdernier filed the present suit against Porterie, his partners Claude Duke, John Hantel, and Eric Lundin, and their malpractice insurer, St. Paul Fire & Marine Casualty Company, claiming defamation, breach of contract, malpractice, and negligent infliction of emotional distress. Among other things, Delesdernier claimed that she suffered severe mental anguish as a result of her attorney's withdrawal from her case because he had represented her for fifteen years, and then had left her without counsel only two months away from trial with certain interrogatories and requests for admissions still to be answered.

Trial was scheduled for February 14, 1977, before then District Judge (now Circuit Judge) Alvin B. Rubin. Before trial commenced, the judge called the attorneys and plaintiff into his chambers. He informed them that he had some concern about his ability to act as a trier of fact if the parties elected to try the case without a jury:

* District Judge of the Eastern District of Louisi-

ana, sitting by designation.

THE COURT:

Yesterday afternoon, Mr. Chesnutt [counsel for Delesdernier] mentioned to me that both parties were considering the possibility of a non-jury trial. You do have a right to a non-jury trial, if you want one; and if you do elect to have one, I would ask another judge to hear the case, because while I don't believe I know either Mr. Porterie or Mr. Duke well enough to prevent me from presiding over a jury trial, I do believe that if a matter came down to credibility of witnesses, that I would not want a juror sitting in the case who knew the parties to that degree.

.         .         .         .         .

The judge explained that he was an acquaintance of both Porterie and Duke but was not "social friends" with either. He proceeded to give a detailed account of the circumstances in which he met both men and how he was acquainted with them. He explained further:

I don't know either of them any better than I know three or four hundred lawyers in New Orleans. But I do know three or four hundred lawyers well enough that I wouldn't want to be in the jury where they were on one side and a non-lawyer was on the other side.

So, if you do wish to try the case to a jury, I see no reason to disqualify myself. I can be, I think, completely objective in my rulings, and I don't have any feeling that my degree of friendship with either of them would affect any legal rulings I make. I do have a feeling that my degree of acquaintanceship with them might have some weight one way or the other in weighing credibility if either or both of them testify. It might, indeed, weigh against them. I'm not sure. It might be that I would lean over backwards. But, in either event, they are entitled to someone who will neither lean forwards nor backwards but just stay straight up in the middle.

So, the net of that is that if you and Mr. Chesnutt decide that you do want a non-jury trial, I won't require you to have a jury trial, but I will re-allot the case to another judge. That's what we do all the time when that problem arises.

Delesdernier did not wish to waive her right to a jury, and as neither side objected to Judge Rubin as a trial judge, he presided at the trial. After a three day trial, the jury returned a verdict of $25,000 for negligent infliction of mental anguish. The jury also determined that the defendants had not defamed Delesdernier. The breach of contract issue was dismissed without prejudice at the close of plaintiff's case.

After the trial, Delesdernier moved for a new trial on the issue of defamation. The court denied this motion. It also denied defendants' motion for a judgment N.O.V. on the negligence issue. However, the court granted defendants' motion for a remittitur and in the alternative for a new trial; specifically, it ordered Delesdernier to accept an award of $10,000 or face a new trial. Delesdernier refused the award, and a new trial was ordered. The court's remittitur order was made in a minute entry and did not discuss which issues would be retried if the remittitur were refused.

Subsequently, Judge Rubin was appointed to this court. Judge Robert Collins became the presiding judge assigned to replace him. Judge Collins ruled that the second trial would be limited to the issue of negligence, and that the issue of defamation would be excluded. On September 22, 1979, the case was reassigned to Judge Peter Beer, who presided at the second trial, held on June 9 and 10, 1980. In the second trial, the jury found for Delesdernier on the negligence issue, but awarded her only $1,500. Delesdernier then brought the present appeal, claiming that errors were committed by the district judges in both her trials.

*Disqualification Issues*

Delesdernier's first point on appeal is that Judge Rubin should have disqualified himself from the first trial under the judicial disqualification provisions of 28 U.S.C. § 455(a):

Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

Delesdernier's argument is based on Judge Rubin's claim that he would have to recuse himself if the parties asked him to act as a trier of fact in a bench trial. He did this because he believed that his degree of acquaintanceship with defendants Porterie and Duke might have some weight in assessing the credibility of their testimony. However, argues Delesdernier, when Judge Rubin considered whether to grant a remittitur and a new trial in the alternative, he was required to weigh the credibility of the witnesses in any event; this is because a motion for a new trial requires the judge to decide if the verdict is against the great weight of the evidence.[1]

Defendants argue in reply that even if this is so, Delesdernier has raised this argument for the first time on this appeal, whereas Judge Rubin's disclosures were made prior to the first trial. Delesdernier should have raised the argument concerning the possibility that Judge Rubin would have to weigh evidence at that point. After all, a motion for a new trial by the losing party is hardly an unforeseeable event in a jury trial—indeed it is usually offered as a matter of course by any counsel with more than limited experience. In any case, a motion for disqualification was not raised even after defendants did move for a new trial. Defendants thus insist that the lack of timeliness of the motion prevents our consideration of it now.

In order to decide to what extent a motion for disqualification under § 455(a)[2] must be timely made, a preliminary discussion of the history of the statute and related provisions is necessary. Prior to 1974, there were two relevant provisions concerning disqualification of federal judges. These were 28 U.S.C. § 144 and an earlier version of 28 U.S.C. § 455 (amended 1974):

### § 144. *Bias or prejudice of judge*

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

### § 455. *Interest of justice or judge*

Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein.

Section 144 contains an explicit requirement of timeliness. The earlier version of § 455 does not. In 1974, Congress amended § 455 with a view to stiffening the conflict of interest provisions for the federal judiciary. Act of December 5, 1974, Pub.L. 93–512, § 1, 88 Stat. 1609, *as amended by* Act of Nov. 6, 1978, Pub.L. 95–598, Title II, § 214(a), (b), 92 Stat. 2661. The present

---

1. *E.g., Conway v. Chemical Leaman Tanklines, Inc.*, 610 F.2d 360 (5th Cir. 1980); *Taylor v. Fletcher Properties, Inc.*, 592 F.2d 244 (5th Cir. 1979); *Spurlin v. General Motors Corp.*, 528 F.2d 612 (5th Cir. 1976); *Cities Service Oil Co. v. Launey*, 403 F.2d 537 (5th Cir. 1968); *see also* 6A Moore's Federal Practice ¶ 59.08[5] (2d ed. 1976) (explaining that in passing on a motion for a new trial a judge must evaluate and weigh evidence.)

2. Although Delesdernier might also have argued disqualification under other portions of § 455, her motion was made only with respect to § 455(a). Thus we are concerned here only with the question of the timeliness requirements under that section of the statute.

version of § 455 now provides, in pertinent part:

§ 455. *Disqualification of justice, judge or magistrate*

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(3) Where he has served in governmental employment and in such capacity participated as counsel, advisor or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

. . . .

(e) No justice, judge, or magistrate shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

The new version of § 455 followed for the most part the language of Canon 3 C of the ABA Code of Judicial Conduct. *See* H.R. Rep.No.93–1453, 93d Cong., 2d Sess. 4–5, *reprinted in* [1974] U.S.Code Cong. & Ad. News 6351, 6353–54. The new § 455 also adopted some of the language from § 144, and this circuit has held that "substantively the two statutes are quite similar, if not identical." *Phillips v. Joint Legislative Committee,* 637 F.2d 1014, 1019 & n.6 (5th Cir. 1981); *see Davis v. Board of School Commissioners of Mobile County,* 517 F.2d 1044 (5th Cir. 1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976) (Section 144 and new section 455 are to be construed in *pari materia* and same substantive test of bias would be applied.).

Two things about the 1974 version of § 455 are worthy of note. The first is that the statute now contains a waiver provision for situations falling within the general provisions of § 455(a) if full disclosure is made, but waiver is not possible if the situation falls within one of the specific categories listed in § 455(b). The second point is that even after the 1974 amendment, § 455 still contains no explicit procedural requirements.

The legislative history of the 1974 amendment reveals that the Justice Department suggested that the new statute should include some explicit limitation of time similar to § 144 "to prevent applications of disqualification from being filed near the end of a trial when the underlying facts were known long before," H.R.Rep.No.93–1453, 93d Cong., 2d Sess. 9, *reprinted in*

[1974] U.S.Code Cong. & Ad.News 6351, 6358. However, Congress did not, for reasons of its own, incorporate this recommendation into the statute. One court has read this fact as proof that Congress did not intend any timeliness requirements for § 455. *SCA Services, Inc. v. Morgan*, 557 F.2d 110, 117 (7th Cir. 1977). However, prior to the 1974 amendment courts had generally held that a timely objection under the old § 455 was necessary. *E.g., Adams v. United States*, 302 F.2d 307, 309 (5th Cir. 1962); 13 Wright, Miller & Cooper Federal Practice and Procedure: Civil § 3552 at 382 n.1 and cases cited therein. Thus "Congress' failure to act could as easily have been the result of a belief that the judicial gloss on old section 455 would survive." Note, *Disqualification of Federal Judges for Bias or Prejudice*, 46 U.Chi.L.Rev. 236, 263 (1978) (hereinafter cited as *Disqualification of Judges*); *see Davis v. Board of School Commissioners of Mobile County, supra* (New § 455 was designed to eliminate only specific judicial gloss given statute by subjective "opinion of judge" test and "duty to sit" test; judicial gloss on statute requiring that bias be extra-judicial remains in full force after new enactment.).

We thus are unconvinced that the question is conclusively determined by the legislative history of the 1974 amendments, and we must base our decision on other considerations as well. The general purposes behind the statute as well as the statute's language might seem to indicate that no timeliness requirement should obtain. First, the statute is directed to judges, not to litigants, and it is meant to be self-enforcing. Thus whenever the judge is called upon to disqualify himself he should be prepared and required to consider the propriety of his remaining in the case. Second, the purpose of the statute is to increase public confidence in the judiciary by removing even the appearance of impropriety or partiality. That policy is not served by permitting an arguably biased judge to remain in a case simply because an incompetent or insufficiently diligent counsel failed to raise a timely objection.

Despite the force of these arguments, the lack of a timeliness rule has its own problems. If disqualification may be raised at any time, a lawyer is then encouraged to delay making a § 455(a) motion as long as possible if he believes that there is any chance that he will win at trial. If he loses, he can always claim the judge was disqualified and get a new trial. This result would not comport well with the purposes behind § 455(a). As one commentator has put it:

> The public is not likely to be convinced that a judge is any less biased merely because the facts that cast doubt upon his impartiality were not complained about until well into the proceeding. On the other hand, it might legitimately be asked whether the spectacle of an attorney dragging his opponent through a long and costly proceeding, only to conclude by moving for disqualification of the judge, is not equally detrimental to public impressions of the judicial system.

Note, *Disqualification of Judges, supra*, at 263–64 n.155. Lack of a timeliness requirement encourages speculation and converts the serious and laudatory business of insuring judicial fairness into a mere litigation stratagem. Congress did not enact § 455(a) to allow counsel to make a game of the federal judiciary's ethical obligations; we should seek to preserve the integrity of the statute by discouraging bad faith manipulation of its rules for litigious advantage.

■ We are thus convinced that timeliness may not be disregarded in all cases regarding disqualification under § 455(a).[3]

---

**3.** Both the Second and Ninth Circuits have held that some sort of timeliness requirement is appropriate for the present version of § 455. *In Re International Business Machines Corp.*, 618 F.2d 923 (2d Cir. 1980); *United States v. Daley*, 564 F.2d 645, 651 (2d Cir. 1980), cert. denied, 435 U.S. 933, 98 S.Ct. 1508, 55 L.Ed.2d 530 (1978); *United States v. Conforte*, 624 F.2d 869 (9th Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980). *Accord, City of Cleveland v. Cleveland Elec. Illuminating Co.*, 503 F.Supp. 368 (N.D.Ohio 1980); *Cf. Satterfield v. Edenton-Chowan Board of Education*, 530 F.2d 567, 574–75 (4th Cir. 1975), and cases cited therein at n.21; *United States v. Patrick*, 542 F.2d 381, 390 (7th Cir. 1976), *cert.*

Moreover, we think that the facts of the present case are well suited to a timeliness requirement. Here the trial judge raised the possibility of disqualification himself at the very beginning. Before trial began, he gave a full and fair disclosure of his situation as regards defendants Porterie and

Duke, and indeed described his acquaintance with them in painstaking detail. Thus it cannot be seriously argued that Delesdernier or her counsel were unaware before trial began of facts which might arguably support a § 455(a) motion for disqualification.[4] We think that the motion

denied, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977); Marcus v. Director, Office of Workers' Compensation Programs, U. S. Department of Labor, 548 F.2d 1044, 1051 (D.C. Cir.1976), and cases cited therein at n.21 (stating general rule that one must raise the issue of disqualification of the trier, whether he be a judge, administrator, or an arbitrator, at the earliest practicable moment after relevant facts become known). Only the Seventh Circuit has stated its opposition to any timeliness requirement. SCA Services, Inc. v. Morgan, 557 F.2d 110 (7th Cir. 1977). Conforte, supra, described SCA's holding as dicta, since in SCA the objection to the qualification was made before trial on the merits. However, we note that dictum or not, SCA has been followed by at least one district court in the Seventh Circuit. Muench v. Israel, 524 F.Supp. 1115 (E.D.Wis.1981). As mentioned supra, the Court in SCA relied on the legislative history of § 455. See also Idaho v. Freeman, 507 F.Supp. 706, 720 (D.Idaho 1981) (concluding that "the procedural requirements, or the lack thereof, are carried over from the prior section [455]"). However, as we have pointed out, the argument from legislative history is one which cuts both ways, for if the procedural requirements from the old § 455 are carried over into the new, this would suggest that a timeliness requirement obtains.

One decision of this circuit had previously considered the timeliness issue, but found it unnecessary to decide the issue on the facts of the case. Potashnick v. Port City Construction Co., 609 F.2d 1101 (5th Cir.), cert. denied, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980). In Potashnick, the court noted that the trial judge could have been disqualified under two separate provisions of § 455: (1) the judge's prior business dealings with one of the attorneys in the case raised a problem under § 455(a) and (2) the fact that the judge's father was a senior partner in that attorney's firm was grounds for disqualification under § 455(b)(5)(iii). The first ground was not discovered by the opposing side until after trial had been concluded; the second ground had been known to all parties from the inception of the case. The court held that waiver was not possible as to the first ground, since there had been no full and fair disclosure. As to the second ground, the opposing party, Port City, made no motion asking for disqualification even when the trial judge indicated that he would accede to such a suggestion. Nevertheless, this ground, like the previous one, was raised for the first time on

appeal. The court held that the second ground, based as it was on § 455(b), could not properly be subject to waiver. It then considered the possibility that the second ground raised was untimely; it noted that the language of the statute made no mention of any timeliness requirement, and mentioned the argument made in SCA in passing. However, it concluded that "[w]e need not decide, however, whether a reversal on this ground alone would be foreclosed by Port City's failure to raise the issue of disqualification, or to even make an issue when invited to do so by the judge, until judgment was entered against it. The prior ground for reversal is sufficient to mandate a new trial." Id. at 1115. Thus although there were grounds for disqualification under § 455(b), the court in Potashnick did not decide the timeliness question with respect to it, since adequate grounds existed under § 455(a). However, the issue is squarely before us today, and we have decided to follow the approach of the Second and Ninth Circuits, basing our decision on the view expressed in Potashnick itself that "[a]lthough section 455 places the obligation to disqualify with the judge, a litigant should not be permitted to utilize a disqualification issue as part of his trial strategy." Id.

One commentator has argued that a distinction should be drawn between § 455(a) and § 455(b) with respect to timeliness. Note, Disqualification of Judges, supra, at 265. Grounds for disqualification under § 455(a) permit a waiver after full disclosure of all relevant facts, while grounds under § 455(b) do not. This might suggest that arguments for timeliness under § 455(b) have less force, or at least that a requirement of timeliness under § 455(b) should be less stringent than one under § 455(a). However, we note that both Conforte, supra, and In Re International Business Machines, supra, involved motions for disqualification under § 455(b) (Conforte involved a motion under § 455(a) as well), and in both these cases the § 455(b) motions were held untimely. Because Delesdernier only raised a motion for disqualification under § 455(a) as an issue, we need not decide if considerations of timeliness would be different under § 455(b).

4. Delesdernier argues that Judge Rubin's distinction between his ability to sit at a bench trial or at a jury trial is without merit, since he would have to weigh the evidence if a motion for a new trial were made. If so, this is clearly an argument which could have been raised be-

raised for the first time on appeal, and after two full trials on the merits, is too tardily made for us to consider it now.[5]

*Remittitur*

Delesdernier's second point on appeal is that the trial court's remittitur of her $25,000 verdict to $10,000 was improper. The scope of appellate review of a trial court's order of remittitur in this circuit is set forth in *Bonura v. Sea Land Service, Inc.*, 505 F.2d 665 (5th Cir. 1974). The general standard of review is a strict one and the trial court will be reversed only if the party opposed to the remittitur shows an abuse of discretion by the judge. *Id.* at 669. For an appellate court to find an abuse of discretion, it must appear that the jury's verdict was *"clearly within* the universe of possible awards which are supported by the evidence." *Id.* at 670. (emphasis in original). If a remittitur was proper under this standard, the next question is "whether the amount of the award remaining after remittitur reflects the maximum award which the evidence will

---

fore trial began. Of course, Delesdernier could not have known for *certain* that defendant's counsel would move for a new trial if defendant lost; but such motions are regularly proffered by losing counsel; this is true even when there is little chance that they will be granted. In any case, even if the motion for a new trial did come as a bolt from the blue to Delesdernier, no motion for disqualification was made at that point. Nor was a motion made when defendants moved to limit issues to negligence and exclude defamation at the second trial, even though a finding of disqualification would have given Delesdernier a new trial on all issues. We emphasize that we do not suggest that a motion for disqualification would have been timely if made at that point. It is not necessary for us to decide when the motion became untimely for the purposes of this appeal, other than to say that it certainly was untimely when raised for the first time before this court. Our point in making these observations is that Delesdernier apparently did not consider the problem worthy of notice at any point in the litigation until after the second trial brought her a smaller money judgment. It is precisely this sort of speculation which a timeliness rule is designed to prevent.

A case in which the relevant information is not discovered until late in the litigation would present an entirely different question. This is suggested by the situation in *Potashnick*, note 3 *supra.* Facts which supported the first ground of disqualification were not discovered until after trial had been concluded. It is interesting to note that the court raised the issue of timeliness only with respect to the second ground and not the first. It thus implied that timeliness would not be a concern with the first ground, since the relevant facts were not discovered until after trial. These circumstances are not present in the case before us now. Nor is this a case in which the alleged conduct is especially egregious. In *United States v. Conforte, supra*, at 880, the Ninth Circuit cautioned that it would "leave open the question of whether timeliness may be disregarded in exceptional circumstances."

5. No better example exists of the potential waste of judicial resources which can be caused by an untimely motion for disqualification than *In Re International Business Machines, Inc.*, 618 F.2d 923 (2d Cir. 1980). This case was one of a continuing series of skirmishes in the litigation of *United States v. IBM*, perhaps the longest and most massive legal battle in American history. IBM's counsel raised the issue of disqualification under § 455 over four years after trial had commenced, after over seventy live witnesses had appeared, and after virtual mountains of documentary evidence had been introduced. The Second Circuit explained:

> We have found no case, and none exists, where a recusal would result in the waste involved here. During the past decade the investment of judicial time and energy as well as that of the parties to this litigation has been immense. IBM is not unconscious of this factor. It therefore urges the assignment of a new judge who would examine the record and purge those parts which reveal extrajudicial bias. We are told that a "large part" of the record could thus be salvaged. The issue is not simply how long this would take but rather whether we could reasonably expect a judge to accomplish the task at all. ... The labors of Sisyphus pale by comparison to those that would be imposed upon a new judge, and in the end, the attribution of extrajudicial bias would require extrasensory perception.

*Id.* at 934. Yet if factors for disqualification under § 455(b) were found, as was urged in that case, no waiver would have been possible; in the absence of a timeliness rule, disqualification would have been mandatory.

The present case does not approach *United States v. IBM's* gargantuan size and byzantine complexity. However, no small waste of judicial resources is involved here. There have been two full trials on the merits in this case, and disqualification would require a third, at least with respect to the issue of defamation. Although the proportions are smaller, the principle is still the same.

support or whether it merely represents the trial court's opinion of what the proper award should have been." *Id. Accord, Geyer v. Vargas Productions, Inc.*, 627 F.2d 732 (5th Cir. 1980); *Gorsalitz v. Olin Mathieson Chemical Corp.*, 429 F.2d 1033 (5th Cir. 1970).

■ We think the record of the first trial supports the trial judge's decision, and we find no abuse of discretion in his ordering a remittitur. The evidence obviously supports a finding that Delesdernier suffered some emotional distress from Porterie's withdrawal from her case. However, Delesdernier admitted that she was able to find new counsel to obtain an extension of time for trial shortly after Porterie withdrew. Delesdernier's daughter, Carol Marchard Arnaud, stated that her mother was "in a bad state" after receiving Porterie's letter, and that "she was upset for a couple of weeks." Delesdernier complained of numbness in her face as a result of her nervousness about an upcoming deposition of her uncle, Mark Delesdernier. However, these events occurred in 1975, some three years after Porterie's withdrawal. The deposition itself was eventually taken in 1976. Delesdernier visited a Dr. Labourdette in 1975 and 1977 concerning the numbness in her face. Dr. Labourdette testified that on one of the visits, in May of 1975, Delesdernier described her "marked anxiety" and gave a history of a whiplash injury. Dr. Labourdette recalled that "she was having some legal procedure going on in April of '75, . . . and it caused her to be very upset, and . . . that is why she came in that particular day." Dr. Labourdette did not give any testimony which connected the numbness in Delesdernier's face in 1975 or her whiplash injury to Porterie's withdrawal in 1972.

Based on the record, we agree with the trial court that the jury's $25,000 verdict is not clearly within the universe of possible awards supported by the evidence. Hence we think a remittitur was proper. As to the $10,000 amount chosen by the court, we note that the trial judge is to be given great deference in his choice of a maximum

award, since "he, and not the appellate court, was present during the ebb and flow of the trial." *Bonura, supra*, at 670. As we stated in *Bonura*, we will assume that the amount remaining after the remittitur reflects the maximum possible award "unless the party opposed to the remittitur can point to credible evidence which would support a greater recovery." *Id.* In the light of the record before us, we are unable to say that the trial judge's choice was incorrect.

*Jury Instructions*

■ Delesdernier's third point of error concerns remarks which the trial judge made at the first trial. Delesdernier testified at the trial that the August 17 letter she received from Porterie (accusing her of illegally removing files from Porterie's office) showed his secretary's initials on it, indicating that Porterie had dictated it to his secretary. The trial judge interrupted testimony at that point and stated that as a matter of law, a dictation to a secretary could not be publication within the meaning of the doctrine of defamation. Both sides are agreed that this is not a correct view of Louisiana law. However, at the close of the case the trial court gave what both sides agree is a correct instruction of the law, namely, that a defamatory remark is published if it is written or spoken to one other person other than the person it was intended for. *See, e.g., Toomer v. Breaux*, 146 So.2d 723 (La.App.1962) (rule applies to non-privileged communications; as to privileged communications, reasonably necessary use of clerical personnel does not constitute publication). We need not decide whether the parties are correct in assuming that the pre-instruction remarks were contrary to Louisiana law. Even assuming that the remarks stated the law incorrectly, Delesdernier's attorney made no objection to them at that point nor at any other point prior to this appeal. It is important that the parties make known to the trial court what omissions or commissions are objected to and why so that the trial court can act to correct errors if they are present, and ordinarily this court will not consider issues

which are only raised for the first time on appeal. *Wright v. Hartford Accident & Indemnity Co.*, 580 F.2d 809 (5th Cir. 1978). There is an exception to this rule where refusal to consider the issue would result in a miscarriage of justice, *Calmaquip Engineering West Hemisphere Corp. v. West Coast Carriers, Ltd.*, 650 F.2d 633 (5th Cir. 1981); *In Re Corrugated Container Antitrust Litigation*, 647 F.2d 460 (5th Cir. 1981), or where there is no opportunity to make a timely objection, *In Re Novack*, 639 F.2d 1274 (5th Cir. 1981). However, neither of these exceptions obtains here. Delesdernier has offered no reasons why counsel could not have objected to the trial court's remarks or specifically requested that the jury be instructed to disregard them. Moreover, since the trial judge corrected himself *sua sponte* in his final instructions, we are unconvinced that a miscarriage of justice results from our refusal to consider the issue now.

For similar reasons we think Delesdernier's fourth point of error is also untimely. Delesdernier argues that additional jury instructions given in the second trial were confusing to the jury. These instructions were given after the jury had begun deliberations; the jury sent a note back to the judge requesting additional instruction on the one year period of prescription under Louisiana law. The judge called the jury in and gave additional instructions in the presence of both counsel. After the instructions were given, Delesdernier's counsel was specifically asked if he had any objections to these instructions and he stated that he had none. He will not be heard to object now for the first time on appeal.

### Admissibility of Porterie's Letter

Delesdernier's final point of error concerns a ruling of the district court at the second trial. During the trial, Delesdernier was questioned by her counsel concerning the August 17 letter from Porterie (which had stated that she had illegally seized Porterie's files):

Q. Was there anything in that letter that caused you distress?

A. I worked with this man all those years and he gave me the key that I could come and go out with the papers and here he writes me this letter calling me a thief—

At this point defense counsel objected and a lengthy bench conference followed. The trial judge sternly admonished Delesdernier for her continual habit of not responding directly to questions put to her, making speeches and engaging in gratuitous observations. An examination of the record indicates that indeed, Delesdernier had been consistently warned, both by Judge Beer at the second trial and by Judge Rubin at the first trial, that she was not to engage in this sort of activity, and that she had, nevertheless, persisted in doing so. Defense counsel also objected to the question posed in that it was relevant only to the issue of defamation, an issue which was not under consideration at the second trial. The following exchanges occurred between defense counsel, Mr. Hunley, the court, and Delesdernier's counsel, Mr. Roy:

MR. ROY: I am not trying to put it [the issue of defamation] before the Jury. Let me make my point. On mental anguish.

THE COURT: As far as I'm concerned, however nebulose [sic], I'm going to let him [Mr. Roy] develop the question of mental anguish, that is before the Jury. That's all that is before the Jury.

. . . .

MR. HUNLEY: I must respectfully object to the Court's ruling allowing the plaintiff to comment on the statements made in these notes about her entering the office illegally and taking the files without authority, that having been already passed upon by the Jury in favor of the defendant in the first trial when they ruled in favor of the defendant on the issue of defamation.

THE COURT: As far as I am concerned, counsel for plaintiff is blameless. He did, as far as the Court is concerned nothing on his part to open up any area with respect to defamation. It's simply a part of the unsolicited unresponsive

answers of the witness. I say to counsel, put the questions to the witness, solicit to her answers to be in order. Tell her that when you go back on the record before the Jury.

MR. ROY: Am I to understand the ruling that I can go into her mental anguish because he accused her of breaking the law?

THE COURT: No; mental anguish on the business of whether or not there has been any malpractice. That doesn't have anything to do with anything other than that. That's the sole issue here.

■ Delesdernier argues that this ruling prevented her counsel from introducing relevant evidence of the content of the letter and her reaction to it to establish the mental anguish she suffered as a result of Porterie's withdrawal from the case. We disagree. The language of the trial court's ruling, both on its face and in the context of the discussion, is clear. Defense counsel's objections were overruled. Plaintiff's counsel was permitted to introduce evidence of the letter to the extent that it was relevant to mental anguish caused by Porterie's withdrawal from the case. Delesdernier's reactions to the allegedly defamatory comments within the letter would be admissible to the extent that they showed that Porterie was negligent in his representation of Delesdernier and this poor representation caused her anguish. They would not, as plaintiff's counsel suggested, be admissible simply because Porterie accused Delesdernier of breaking the law. We think no reversible error was made as to this ground. The judgment of the district court is affirmed.

AFFIRMED.