# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 24, 2013

Decided May 6, 2014
Reissued May 16, 2014
Reissued February 6, 2015

No. 09-3071

UNITED STATES OF AMERICA,
APPELLEE

v.

JARON BRICE,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:05-cr-00367-1)

---

*Jonathan S. Jeffress*, Assistant Federal Public Defender, argued the cause for appellant. With him on the briefs were *A.J. Kramer*, Federal Public Defender, and *Rosanna M. Taormina*, Assistant Federal Public Defender.

*Lauren R. Bates*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Elizabeth Trosman* and *Elizabeth H. Danello*, Assistant U.S. Attorneys.

Before: KAVANAUGH, *Circuit Judge*, and WILLIAMS and SENTELLE, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH, with whom *Senior Circuit Judge* SENTELLE joins.

Opinion concurring in the judgment filed by *Senior Circuit Judge* WILLIAMS.

KAVANAUGH, *Circuit Judge*: Brice was convicted for crimes arising out of a major sex trafficking operation in which he prostituted and sexually abused multiple teenaged girls and adult women. Brice was convicted in federal district court in 2006 and sentenced to a within-Guidelines sentence of 30 years in prison. In his initial appeal, we affirmed his conviction, but remanded for further fact-finding on one narrow sentencing issue. *See United States v. Brice*, 296 F. App'x 90, 91 (D.C. Cir. 2008). On remand, the Government argued that Brice's original 30-year sentence was still appropriate. But the District Court disagreed with the Government and instead sentenced Brice to a below-Guidelines sentence of 25 years.

Although he received a below-Guidelines sentence in his re-sentencing, Brice has again appealed his sentence. Among other things, Brice raises a new argument about the District Court's alleged lack of impartiality – based on events not at the re-sentencing or even at the original sentencing, but rather back at the 2006 trial, particularly in a transcribed ex parte sidebar with the prosecution on February 21, 2006. In the sidebar, the District Court and prosecutor discussed how one of the detained material witnesses (that is, one of the women alleged to have been sexually abused by Brice) should enter the courtroom for her testimony. The judge concluded that the witness should enter in the same way as other innocent witnesses, from the back of the courtroom with the jury

present. The judge and prosecutor also discussed the possibility that one of the detained material witnesses might assert the Fifth Amendment when called to testify.

The problem for Brice at this point is that he did not raise the impartiality argument in his initial appeal even though he could have done so. Under our precedents, we therefore may not reach the merits of this impartiality claim at this time. Our cases have set forth a general rule of appellate procedure that, at least absent exceptional circumstances, "where an argument could have been raised on an initial appeal, it is inappropriate to consider that argument on a second appeal following remand." *United States v. Henry*, 472 F.3d 910, 913 (D.C. Cir. 2007) (internal quotation marks omitted); *see also Hartman v. Duffey*, 88 F.3d 1232, 1236 (D.C. Cir. 1996) ("We do not reach the merits of defendant's arguments on this issue because of the defendant's failure to pursue it in its prior appeal.").

In the initial appeal, Brice plainly could have raised his impartiality argument based on the February 21, 2006, ex parte sidebar. The relevant February 21, 2006, trial transcript necessary to raise this impartiality issue was available to Brice's appellate counsel during the first appeal. Brice says that during the initial appeal, his appellate counsel did not have access to transcripts of the district court's sealed pre-trial hearings on February 15 and 17, 2006, which occurred with defense counsel present and concerned several issues relating to the material witnesses who had been detained and were potential trial witnesses. That is a red herring. Those transcripts are not the relevant transcripts for Brice's impartiality argument based on the February 21, 2006, ex parte sidebar. The relevant transcript is the February 21, 2006, trial transcript. And during the initial appeal, Brice had access to the February 21, 2006, trial transcript. (In this

appeal, Brice notably has not claimed otherwise.)  Indeed, in the initial appeal, Brice included portions of the February 21 trial transcript in the joint appendix, leaving no doubt that he had access to the transcript necessary to advance this impartiality argument.  *See* Joint Appendix at 163-81, *United States v. Brice*, 296 F. App'x 90 (D.C. Cir. 2008) (No. 06-3135).[1]

In short, in his initial appeal, Brice could have raised the impartiality issue relating to the February 21, 2006, ex parte sidebar.  But he did not do so, and we do not find any exceptional circumstances to excuse the failure to do so.  Whether Brice did not raise the issue in the initial appeal because of his attorney's negligence or because of his attorney's deliberate strategy, our precedents require us to conclude that Brice cannot raise it now in his second appeal.  *See Henry*, 472 F.3d at 913.

To be clear, that does not mean that Brice is out of luck.  Brice can file a collateral Section 2255 motion in federal district court.  In such a motion, Brice can allege that his attorney in the initial appeal provided ineffective assistance by failing to raise an impartiality argument based on the February 21, 2006, ex parte sidebar.  (Brice's counsel in the initial appeal was different from Brice's counsel in the current appeal.)  But what Brice cannot do under our case law is to

---

[1] In the current appeal, Brice notes in passing a comment about Brice and one of the witnesses that the District Court made at the February 15, 2006, pre-trial hearing.  Brice's counsel was present at that hearing.  At the conclusion of the relevant pre-trial hearings, after initially objecting to the judge's comment and seeking recusal, Brice then expressly withdrew and thereby waived any recusal claim based on that comment.  Moreover, Brice could have raised an impartiality argument about that comment in his initial appeal, but he did not do so.

raise this impartiality issue for the first time in his *second* appeal.

*  *  *

We have carefully considered all of Brice's arguments in this appeal.  We affirm the judgment of the District Court.

*So ordered.*

WILLIAMS, *Senior Circuit Judge*, concurring in the judgment: In a previously published opinion in this appeal, the court rejected Brice's claim of judicial bias under "[t]wo separate lines of this Court's precedents." *United States v. Brice*, 748 F.3d 1288, 1289-90 (D.C. Cir. 2014). First, his claim was "waived" under *United States v. Barrett*, 111 F.3d 947 (D.C. Cir. 1997), because he failed to raise it within a "reasonable time" after the grounds for recusal were known. *Brice*, 748 F.3d at 1289 (quoting *Barrett*, 111 F.3d at 951). Second, his claim was barred by our rule that "absent exceptional circumstances, 'where an argument could have been raised on an initial appeal, it is inappropriate to consider that argument on a second appeal following remand.'" *Brice*, 748 F.3d at 1289 (quoting *United States v. Henry*, 472 F.3d 910, 913 (D.C. Cir. 2007)).

I wrote separately to criticize *Barrett*, but agreed that it bound us. *Brice*, 748 F.3d at 1290-94 (Williams, J., concurring). As to the rule of appellate forfeiture articulated in *Henry*, I regarded Brice's allegations of judicial bias as "exceptional" under that rule, and thus, but for *Barrett*, I would have reversed and remanded. *Id*. at 1294-95.

Brice petitioned for rehearing en banc, seeking to overturn *Barrett* and to reverse the panel's application of the rule articulated in *Henry*. I called for a vote on the petition, in order for the full court to address the viability of *Barrett*; I did not regard the application of *Henry* (forfeiture of a claim by omission in a prior appeal) as independently en banc-worthy.

The majority now reissues its initial opinion with all references to *Barrett* deleted. As a practical matter this moots the en banc. The full court should not spend valuable time on a case that doesn't turn on an en banc-worthy issue. Accordingly, I have withdrawn my call for a vote on the petition.

Yet the results are troubling beyond this case. If the panel majority believed *Barrett* to be sound, I would have expected it to invite the full court to vote the en banc proposal down on the merits. Instead, by stripping all references to *Barrett* from the opinion, the majority merely preserves it in aspic for future occasions.

This silent treatment of *Barrett* creates several anomalies. First, a future defendant with a plausible bias claim not initially invoked "within a reasonable time after the grounds for recusal [we]re known," may decline to raise his claim on appeal; such a defendant would reasonably believe that *Barrett* is the law of the circuit and not want to waste precious space or time with a claim that could prevail only via an en banc. And if and when, notwithstanding *Barrett*, a defendant does raise such a claim, both parties will (again) spend time and pages briefing the status of that case, and the court will (again) spend time reviewing and deciding it.

I continue to believe that *Barrett* was wrongly decided; but of course it binds me. I also continue to regard the majority's application of the *Henry* rule as incorrect. I therefore concur in the result for the reasons I gave initially. Below I append a copy of my earlier separate opinion, not because I regard its prose as deathless but so that the reader can see the whole picture in one place. (One citation is updated to reflect publication in F.3d.)

## A P P E N D I X

WILLIAMS, *Senior Circuit Judge*, concurring in the judgment: The panel does not reach the merits of Brice's claim that the district judge's "impartiality might reasonably be questioned," a claim that if correct would have required the district judge to recuse herself. See 28 U.S.C. § 455(a). It

rests on two propositions: first, the rule created in *United States v. Barrett*, 111 F.3d 947, 951 (D.C. Cir. 1997), that failure to call for recusal "within a reasonable time after the grounds for it are known" waives any claim under § 455(a); second, the "general rule of appellate procedure" that where an argument could have been raised on an earlier appeal, it is inappropriate to consider the argument in a later appeal following a remand, at least absent "exceptional circumstances," *United States v. Henry*, 472 F.3d 910, 913 (D.C. Cir. 2007).  I agree that we are bound by Barrett, though I can find no logic behind its silent choice that this particular omission of counsel must be classified as waiver (entailing no review at all), rather than forfeiture (allowing review for "plain error").   And I believe the circumstances are exceptional enough that counsel's omission on the prior appeal should not prevent review of the current claim.

The substantive claim here is one of bias, and its facts are surely exceptional.  The key event was the initial appearance of a prosecution witness, an appearance designed by judge and prosecutor—in an ex parte sidebar—to generate both pathos and sympathy for the witness.  The witness, known as K.H., was among the women that the defendant evidently controlled in the course of the prostitution offenses for which he was ultimately found guilty.  She and two others had been held as material witnesses, after material-witness proceedings conducted by the district judge who handled the trial.  Because of concern over K.H.'s mental health, she was to be voir dired outside the presence of the jury.  But the Assistant U.S. Attorney spied a chance for more impact, as he explained in the ex parte sidebar:

> I was hoping that there was some way that the jury could see [the witness] come in to see the defendant for the first time because I anticipate that there's going to be

a reaction because she's so in love with him and when she saw the photo spread, she sobbed, I was there.

But it sounds like if you were going to do the voir dire that will be beforehand outside of the jury and the defendant present.

Tr. of Feb. 21, 2006, at 203. The district court obliged, helpfully suggesting the following: "You could call her as a witness, she could enter the courtroom. Have me excuse the jury and do the voir dire. Then we can just do it in that order." *Id.* at 204.

The district court then set out to execute the plan. The court called the marshal over and said that the witness, who was then detained, should be treated "more like a victim than a criminal," *id.*, and then laid out the proposal agreed on with the prosecutor. The court deputy marshal responded by noting that to bring a detained witness through the front door was a policy deviation that would require the approval of his chief. He proposed an alternative, but the judge insisted on the original plan: "It's important that she come in and that the jury see her and the defendant the first time that they see each other." *Id.* at 206. To be sure that it came off, she said she would speak to the supervisor. Evidently she did so, and the staged entry proceeded just as the court and prosecutor had planned.

The entry evidently did not strike defense counsel as odd enough to trigger an inquiry or objection. Even the government doesn't claim that counsel's inaction at trial precludes review here; rather it rests on the fact that in the first appeal (not handled by trial counsel), the transcripts available to counsel included the text of the ex parte sidebar.

Besides arranging the presentation of K.H., the district court on other occasions showed some hostility to the defendant. Standing alone, these expressions might not amount to much. In dismissing a defense contention during one pre-trial hearing, the judge referred to Brice as "the criminal," but then instantly corrected herself—"or alleged, forgive me, alleged criminal." Tr. of Feb. 14, 2006, at 26. The next day, in a discussion of the material witness's mental health and drug use, the defense observed that the witness had a history of drug use. To this, the district court responded, "Well, you should ask perhaps Mr. Brice about that," Tr. of Feb. 15, 2006, at 8, suggesting that any drug use by the witness could be chalked up entirely to Brice, a government claim that the defense contested. The thread of hostile pretrial comments, together with other concerns no longer pressed, prompted the defense to move to recuse the district judge, Tr. of Feb 17, 2006, at 6, a motion later withdrawn after the judge offered assurances of impartiality, *id*. at 16-17. (Counsel may have had in mind Machiavelli's famous caution—"Never strike at a king except to kill.").

The doctrinal obstacle to our consideration of Brice's current claim is *Barrett*'s rule that a party *waives* any objection to the judge's appearance of bias if he fails to raise the issue "within a reasonable time after the grounds for [disqualification] are known." 111 F.3d at 951. As the *Barrett* court expressly ruled against Barrett's bias claim on the merits, the waiver theory was quite unnecessary, as Judge Tatel noted in his concurring opinion. *Id*. at 954. But because the court appeared to rest the outcome in part on the waiver theory, we are obliged to treat it as an alternative holding rather than mere dictum. *Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949) ("[W]here a decision rests on two or more grounds, none can be relegated to the category of obiter dictum.").

*Barrett* contains several curious features. First, in calling defendant's delay a "waiver" of defendant's claim under 28 U.S.C. § 455, it completely overlooks what § 455 has to say about waiver. Subsection 455(e) forbids a judge to "accept" a waiver of any of the grounds set out in § 455(b), whereas for § 455(a), dealing with any instance where the judge's impartiality might "reasonably be questioned" (the subsection relevant to our case), § 455(e) allows "waiver [to] be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification." Before us, the parties haven't argued the matter at all. At a casual first glance, however, the requirement of "a full disclosure on the record" conjures something far more deliberate and elaborate than mere delay, coupled with counsel's imputed awareness of the transcript of the ex parte dealings.

Other courts have recognized § 455(e)'s strictures on waiver yet gone on to insist on timeliness, i.e., to treat delay as effecting a de facto waiver. *United States v. York*, 888 F.2d 1050 (5th Cir. 1989), offers perhaps the most extensive justification. (*Barrett*, treating delay and waiver as interchangeable yet not mentioning what § 455(e) had to say on waiver, evidently saw no need for reconciling its delay rule with the statute.) The *York* court acknowledged that § 455(e)'s bar on waiver of § 455(b) violations "suggests that Congress believed the gain in protecting against actual bias, prejudice, or conflict of interest outweighs the loss to judicial economy in prohibiting waivers." *Id*. at 1055. And the court further observed that the "motivation behind a timeliness requirement is also to a large extent one of judicial economy." *Id*. The "also" is a puzzler, as the language of § 455(e) on its face made the values protected by § 455(b) trumps over judicial economy. No matter. The court went on to offer this rationale for a timeliness requirement:

> [T]he gains in judicial economy from a timeliness requirement are greater than those from permitting waiver. Since both parties must agree to any waiver, no new trial will be saved by waiver once the outcome of trial has been determined. In fact, once any party senses that the proceedings have been favorable to it up to that point, no waiver is likely to occur. On the other hand, a timeliness requirement will proscribe motions that would have invalidated a fully completed trial.

*Id*. In other words, the gain in judicial economy from a timeliness requirement exceeds the hypothetical gain from allowing waiver, so it is reasonable, the court thought, to suppose that Congress was not ruling out a timeliness requirement. This is true, of course, to the extent that one focuses exclusively on waivers *after* the litigation outcome is known or at any rate heavily foreshadowed: in those cases, waiver achieves no judicial economy at all, as the loser, having little or no incentive to preserve the outcome, will not waive. But as waivers normally will not occur in those circumstances *at all*, it seems very doubtful that the scenario played any role in Congress's resolution of the balance. Moreover, the argument does little to refute the rule's apparent anomaly: while recognizing that *deliberate* waiver of § 455(b) values is impossible, it allows an easy loss of those values through mere neglect. And while deliberate waiver of § 455(a) is possible but seemingly very difficult, occurring only—so far as appears on the text of the statute—through a rather formal ceremony, the timeliness rule makes loss easy through neglect. As an absolute bar, a timeliness requirement of course entirely ignores the purpose of § 455(a), which is "to promote public confidence in the impartiality of the judicial process." H.R. Rep. No. 93-1453, at 5 (1974).

Many courts have nonetheless accepted such a timeliness requirement. See, e.g., *Kolon Indus. Inc. v. E.I. DuPont de*

*Nemours & Co.*, 748 F.3d 160 (4th Cir. 2014); *United States v. Brinkworth*, 68 F.3d 633, 639 (2d Cir. 1995); *United States v. Owens*, 902 F.2d 1154, 1156-57 (4th Cir. 1990); *United States v. Nobel*, 696 F.2d 231, 236-37 (3d Cir. 1982); *Delesdernier v. Porterie*, 666 F.2d 116, 121 & n.3 (5th Cir. 1982). The 7th Circuit initially read § 455(e) limits on waiver as barring any timeliness requirement, *SCA Servs., Inc. v. Morgan*, 557 F.2d 110, 117 (7th Cir. 1977), but then noted in dictum a readiness to rethink the matter, *Union Carbide Corp. v. U.S. Cutting Service*, 782 F.2d 710, 716-17 (7th Cir. 1986).

Not only *Barrett* but the other cases insisting on timeliness lay great stress on a concern—which to be sure is plausible—that a party might "take his chances" with a judge, and then raise the recusal issue if unhappy with the outcome. *Barrett*, 111 F.3d at 951 (internal quotation marks omitted). But neither *Barrett* nor the others explains why that risk is so great in connection with § 455 that an absolute bar is the solution, rather than, as for all other rulings or omissions not challenged until appeal, merely limiting relief to review for plain error.

That omission leads directly to another frailty of *Barrett*: it completely disregards the distinction between waiver and forfeiture drawn by the Supreme Court's decision in *United States v. Olano*, 507 U.S. 725 (1993). Because waiver is "'the intentional relinquishment or abandonment of a known right,'" *id.* at 733 (citing *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)), a waiver (if valid and effective) "extinguish[es]" the erroneous character of the relevant ruling. *Id.* By contrast, mere forfeiture has no such effect; an error, despite the absence of a timely objection, remains an error for purposes of Rule 52's provision for review of "plain error." *Id.* at 733-34; accord *United States v. Laslie*, 716 F.3d 612, 614 (D.C. Cir. 2013); *In re Sealed Case*, 356 F.3d 313, 317 (D.C. Cir. 2004). *Barrett* neither recognizes that plain error review is an option,

nor offers an explanation as to why it is not enough of a gaming deterrent in the context of § 455(a). The same objection of course applies to the decisions in other circuits that insist on timeliness but do not call it waiver.

In fact, many courts apply plain error review to § 455(a) claims unchallenged at trial. See, e.g., *United States v. Berger*, 375 F.3d 1223, 1227 (11th Cir. 2004) (reviewing under plain error after failure to seek recusal below); *United States v. Kimball*, 73 F.3d 269, 273 (10th Cir. 1995) (same); *United States v. Franklin*, 197 F.3d 266, 270 (7th Cir. 1999) (noting the "specter of 'sand bagging'" and applying plain error review as a result); *Baldwin Hardware Corp. v. FrankSu Enter. Corp.*, 78 F.3d 550, 557 (Fed. Cir. 1996) (applying plain error); *United States v. Schreiber*, 599 F.2d 534, 535 (3d Cir. 1979) (noting the concern about gaming and applying plain error standard as a result); see also *Noli v. Comm'r*, 860 F.2d 1521, 1527 (9th Cir. 1988).

Indeed, even the government may have no faith in the waiver theory, or even waiver in timeliness's clothing. In its briefing here it makes no claim of either version and offers no citation to *Barrett*. It rather argues, in alignment with the many circuits applying more standard remedies for an omission by counsel, merely that we resolve the issue under a plain error standard. Resp. Br. at 17; see also Brief for United States at 20-21, *United States v. Lang*, 364 F.3d 1210 (10th Cir. 2004) (No. 02-4075).

Were it not for *Barrett*, we would almost certainly regard Brice's failure to raise the issue earlier as forfeiture, not waiver, and we would review under plain error (absent other obstacles). On the facts of this case, I believe the impartiality of the judge "might reasonably be questioned," § 455(a), even if reviewed under the plain error standard. As Brice doesn't challenge the trial outcome but asks only for resentencing, it is

governed by our rule cutting more slack for assertions of plain error when only sentencing is at stake. *United States v. Saro*, 24 F.3d 283, 287-88 (D.C. Cir. 1994).

The panel opinion also cites a second, independent reason for withholding review. Under conventional appellate procedures, we do not consider arguments raised for the first time on a second appeal if they might have been raised on initial appeal. Though generally true, this is "a prudential rule rather than a jurisdictional one," *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739-40 (D.C. Cir. 1995), motivated by a "practical concern for judicial economy," *id.* at 740. Accordingly, we "always possess[] discretion to reach" issues not raised on initial appeal, though this discretion "is normally exercised only in exceptional circumstances, where injustice might otherwise result," *id.* (internal quotation marks omitted); cf. *U.S. National Bank of Oregon v. Independent Ins. Agents of America, Inc.*, 508 U.S. 439, 447 (1993). The ex parte cooperation of the court and prosecutor in this case certainly strikes me not only as "exceptional" but also as creating exceptional circumstances. See *Yesudian ex rel. United States v. Howard Univ.*, 270 F.3d 969, 971 (D.C. Cir. 2001) (exercising such discretion, and noting that the bar presented by a "failure to raise an issue in an initial appeal is far from absolute").

So, contrary to the majority I do not view our appellate procedures as controlling the outcome of this case. Rather, we have a straightforward application of *Barrett*, and are therefore bound to follow it, however much it may be in tension with 28 U.S.C. § 455, with *Olano*, and with our standard treatment of claimed errors not raised in district court.