851 F.2d 916
 In the Matter of Alvin S. MULLER and Phyllis H. Muller, Debtors.
FIRST NATIONAL BANK OF PEORIA, a National Banking
Association, Plaintiff- Appellee,
v.
Alvin S. MULLER, Phyllis H. Muller, Glen Rogers, Robert E.
Rice, Myrtle R. Rice, Charles C. Covey, Trustee,
and Daniel M. Harrod, Defendants-Appellants.
Appeal of Glen ROGERS, Defendant.
 No. 87-1727.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 21, 1988.
Decided July 7, 1988.
Rehearing and Rehearing In Banc Denied Sept. 13, 1988.
 
 James P. Kellstedt, Peoria Heights, Ill., for defendants-appellants.
 David B. Radley, Baymiller, Christison & Radley, Peoria, Ill., for plaintiff-appellee.
 Before WOOD, JR. and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 This is the appeal of an adversary proceeding in bankruptcy, which not only questions the decision by the bankruptcy judge on the merits but particularly the conduct of the proceedings in reaching that decision. The judgment of the bankruptcy court was affirmed by the district court. 72 B.R. 280 (C.D.Ill.1987).
 
 I. BACKGROUND
 
 2
 Involved is a disagreement among the various parties about a farm real estate transaction, and in particular, the rights of the parties to a certified check for $126,539.23, allegedly tendered as either full or partial payment for the farm.
 
 
 3
 This bankruptcy phase of the controversy was preceded by two separate state court proceedings. The first was filed in 1987 by Alvin and Phyllis Muller, initially the sole owners of the farm and the debtors here, and Glen Rogers, as plaintiffs, against defendants Robert E. Rice and Myrtle R. Rice. The plaintiffs claimed to be partners in the farm with defendants and were seeking to rescind their alleged partnership agreement and to require the Rices to return the farm to the Mullers and Rogers. Rogers was described by the Mullers as a "silent partner." It appears to have been the position of the Mullers and Rogers that they, along with the Rices, each owned an undivided one-third interest in the farm. The Rices, however, claimed to be the sole owners following the subsequent conveyance of title to them in 1977 and their tendering of the certified check to the Mullers. The Mullers claimed they had previously deeded the property to the Rices only for zoning purposes in accordance with an unwritten partnership agreement, which the Rices denied. The certified check was dated November 16, 1979, and stated on its face that it was in full settlement of the purchase price. The Mullers held the certified check without negotiating it. Rogers' name did not appear in the chain of title, and he did not join in the conveyance by the Mullers to the Rices.
 
 
 4
 In the second state proceeding in 1983 the National Bank of Peoria had obtained a personal judgment against the Mullers in the amount of $231,642.64. In its efforts to collect on the judgment the bank discovered the certified check being held by the Mullers. The bank's judgment was made a lien on the certified check, and the state court ordered the Mullers to deliver the check to the attorney for the bank.
 
 
 5
 Thereafter, on May 30, 1984, the Mullers filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The bank filed a claim as a secured creditor by virtue of its judgment lien and then filed this adversary proceeding seeking a declaration that the bank's lien on the certified check was superior to all other possible interests. Named as having or claiming to have some adverse interest in the certified check were the Mullers, the Rices, Rogers, Charles Covey, trustee, and Daniel Harrod, an attorney who claimed a lien for attorney's fees. In response, Rogers, the appellant here, claimed to be a silent partner in the farm venture and entitled to one-half of the proceeds of the certified check free of the bank's lien.
 
 
 6
 The case came on for trial before Bankruptcy Judge Max J. Lipkin, now deceased. The bank's evidence established its judgment and its enforcement procedure used to perfect its judgment lien on the certified check.
 
 
 7
 Muller, in his testimony, explained his view that the certified check, contrary to what it said on its face, was intended only to be a partial payment. Therefore he had refused to negotiate it. He explained that he had already deeded the farm to the Rices and had done so merely to accommodate contemplated zoning changes. Rogers, he explained, was his silent partner and was entitled to a share of the certified check proceeds. Muller testified further that Rogers had given the Mullers a quit claim deed of any interest he had in the farm property. Why that had allegedly been done was not explained. Nothing more is known about that alleged partnership.
 
 
 8
 Contrary to Muller's testimony, the attorney for the Rices in the real estate transaction testified that he delivered the certified check to the Mullers as full payment of the balance of the purchase price remaining after the assumption by the Rices of an outstanding mortgage on the farm. Thereafter, the Rices made payments on that mortgage.
 
 
 9
 When the bench trial began neither Rogers nor his attorney was present. The attorney did appear later and participate, but Rogers did not. Judge Lipkin ruled in favor of the bank and later signed a final judgment order containing findings of fact and conclusions of law. The certified check, it was held, belonged to the Mullers alone, but the check was subject to the perfected lien of the bank. The Mullers then, as ordered, endorsed the check to the bank.
 
 
 10
 The Mullers and Rogers appealed to the district court, which affirmed the judgment of the bankruptcy court. Only Rogers, however, appeals to this court.
 
 II. DISCUSSION
 
 11
 Rogers in his brief states the basis for his appeal in these words:
 
 
 12
 The district court erred in holding that substantial justice and due process rights of defendant Rogers were not violated by the bankruptcy judge's management and conduct of the case, including his bias and characterization of Rogers. Inadequate notice, misunderstanding of pleadings, no pretrial conference or jury trial, unreasonable hearing scheduling, accelerated hearings, discourtesy to attorneys including unreasonable time limitations and opportunity to be heard.
 
 
 13
 At a preliminary hearing August 20, 1984, Judge Lipkin expressed his view that since he had had Rogers in court once before he would not be able to believe anything Rogers might say in the present case. Rogers' attorney objected to what he labelled the bankruptcy judge's prejudgment.
 
 
 14
 At the subsequent evidentiary trial on February 4, 1985, which resulted in the order now being appealed, this exchange took place between Judge Lipkin and Mr. James P. Kellstedt, the attorney for Rogers:
 
 
 15
 MR. KELLSTEDT: On behalf of Mr. Rogers, who has, as Mr. Muller testified today, an interest in the property and the proceeds in that check since 1976--.
 
 
 16
 THE COURT: He has no interest anymore because Mr. Radley's client got the money. You are out of order.
 
 
 17
 MR. KELLSTEDT: We are not out of order. We are a party to this lawsuit.
 
 
 18
 THE COURT: I am not going to listen to you anymore.
 
 
 19
 MR. KELLSTEDT: You have not considered the case of the claim of Mr. Rogers at all in this case.
 
 
 20
 THE COURT: You didn't file a proper response.
 
 
 21
 MR. KELLSTEDT: I filed them. They are in the court records.
 
 
 22
 THE COURT: I am not going to argue with you.
 
 
 23
 MR. KELLSTEDT: I wish to call it to your attention that you never considered fairly and fully Mr. Rogers'--.
 
 
 24
 THE COURT: I am not going to hear anymore in this case.
 
 
 25
 Rogers argues on appeal that the bankruptcy court would not listen to his argument in behalf of Rogers and prevented him from presenting Rogers' claims or introducing any evidence. He also objects that the proceeding had not been noticed as a trial and that it was hurriedly conducted without adequate opportunity for him to represent his client.
 
 
 26
 Rogers also makes a series of challenges to the bankruptcy proceeding, but as Rogers admits, he failed to raise these issues in that court. He thus has waived any challenge. Ohio Casualty Ins. Co. v. Bazzi Constr. Co., 815 F.2d 1146, 1149 (7th Cir.1987). Rogers concedes his waiver and asks only that we review the challenged issues under a plain error analysis. It is dubious whether this circuit recognizes plain error in a civil proceeding, such as the case here. If invocable at all, "[o]nly in most exceptional circumstances we will allow a civil appellant to make a nonjurisdictional argument for the first time on appeal...." Walker v. Maccabees Mut. Life Ins. Co., 753 F.2d 599, 602 (7th Cir.1985). We are not persuaded that this case represents an exceptional circumstance.
 
 
 27
 The preliminary hearing at which Judge Lipkin expressed his view about Rogers' veracity was about five and onehalf months before the trial. Rogers made no effort to have Judge Lipkin recuse himself because of bias. See 28 U.S.C.A. Sec. 144 (West 1968); 28 U.S.C.A. Sec. 455 (West Supp.1988). Rogers later proceeded to trial without objection and only raised the bias issue after Judge Lipkin verbally announced his ruling unfavorable to Rogers. Any objections to the remarks of Judge Lipkin at the preliminary hearing were thereby waived.
 
 
 28
 Rogers argues that Judge Lipkin treated him unfairly during the trial. Rogers' attorney, however, failed to appear until after the bank had presented its judgment and lien evidence. Rogers himself did not appear at any time. Rogers' attorney stated Rogers' position to the court, which was that his client's claim to a share of the check should be litigated in the pending state court litigation. Thereafter, however, Rogers' attorney proceeded to interrogate witnesses, along with the other attorneys involved in the proceeding. When Judge Lipkin announced his decision unfavorable to Rogers, Rogers' counsel then objected, and the above quoted exchange occurred between them.
 
 
 29
 It appears from the record that Rogers' counsel was objecting to the holding and wanted to argue about it. He did not attempt to present any evidence, and made no offer of proof in behalf of Rogers, although he objects now that he was prevented from introducing any evidence. It is obvious that the conduct of this trial was not a model proceeding and left much to be desired. The attorney for Rogers, however, did not attempt to develop a record at trial so as to have a factual basis for this appeal. He only offered arguments there, and here. We do not know specifically what evidence Rogers claims he was prevented from offering.
 
 
 30
 Rogers' attorney argues further that Judge Lipkin had a publicly well-known record of abrasive and unfair treatment of attorneys. That such a state of affairs did exist was most unfortunate and was later addressed by the Circuit Council of the Seventh Circuit. Judge Lipkin thereafter promptly resigned. Certainly Rogers' attorney was not surprised by Judge Lipkin's conduct. Likewise counsel for the bank conceded that he, too, was aware of possible trial problems that might arise, and therefore he avoided any confrontation with Judge Lipkin. During the trial Rogers' attorney also seems to have adopted the same nonconfrontation trial tactic, and only objected when it was announced that his client Rogers had lost. Each attorney took a calculated risk. That risk was that such tactics could mean that matters which might be objected to would not be properly preserved for appellate review. Had Rogers' counsel done more for his client there, then we, too, might have been able to do more for him here.[1]
 
 
 31
 If, as Rogers argues to this court, the notice of trial was not adequate to alert him that it was a trial, then he should have revealed that concern when he appeared, but before he actively participated. It was only on appeal that the issue was raised. In any event, the notice, clearly indicating that the substantive merits of the case would be heard and decided, was sufficient.
 
 
 32
 Rogers also objects on appeal because it was a bench, not a jury trial, but he did not request a jury trial and did not object in the bankruptcy court to proceeding with the bench trial. This objection comes too late on appeal. Fed.R.Civ.P. 38(d).
 
 
 33
 Rogers also claims that his pleadings, which contained an affirmative defense and a counterclaim, should have been taken as confessed because the bank failed to respond. In his answer to the bank's complaint Rogers had denied that the bank had a first and prior lien on the certified check, and he claimed for himself a one-half interest in the check, the same as was being litigated in state court. As an affirmative defense he alleged that he, Muller, and Rice had entered into a partnership, each having a one-third interest in the farm, and that contrary to their agreement Rice was holding the farm as his own.
 
 
 34
 The bank responds that it received no notice or copy of the pleading filed by Rogers, but that in any event no response was necessary as the pleading as a whole alleged only an affirmative defense. See Fed.R.Civ.P. 5. But, as with the other issues, any alleged pleading deficiency should first have been raised by Rogers in the bankruptcy court, not on appeal.
 
 
 35
 Rogers also argues that the bankruptcy court's final order somehow exceeded the parameters of the bank's complaint. Once again no objection was raised by motion or otherwise in the bankruptcy court, but in any event we see no merit to the objection.
 
 
 36
 As difficult as the bankruptcy trial may have been for all concerned, nothing but argument, without any supporting evidence being offered in any way, was advanced in behalf of Rogers' claim. In sum, these series of challenges do not add up to the exceptional circumstance that would call for an application of any type of plain error doctrine.
 
 
 37
 Finally, Rogers challenges the bankruptcy court's finding of fact that he had no claim in the certified check. We review such findings against a clearly erroneous standard. Only if we are " 'left with the definite and firm conviction that a mistake has been committed,' " may we disturb the court's findings. Anderson v. City of Bessemer, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Here we cannot say that the bankruptcy court was clearly erroneous in its findings of fact. The only support for Rogers' claim to a share of the check was Muller's testimony that Rogers had an interest, but it was unexplained how that came to be. There is nothing to show that when the bank perfected its lien in the certified check it had notice of any unrecorded claim by Rogers to the real estate or to the certified check. Nothing in the state court proceeding, or otherwise, served to give Rogers any lien on the check, as far as we can tell from this record.
 
 
 38
 We regret the necessity of lawyers having to practice in an unpleasant and difficult atmosphere such as that which temporarily existed in that particular bankruptcy court, but even in such difficult circumstances the lawyers must see to the building of a reasonable and adequate record for appeal. Mere arguments in the trial court and here, and the late raising of other objections, will not suffice.
 
 
 39
 Costs are waived.
 
 
 40
 AFFIRMED.
 
 
 
 [1]
 At oral argument Rogers' appellate lawyer, who also served as the trial attorney, demonstrated his commendable ability as a seasoned practitioner to be fully heard in behalf of his client when he was so inclined. In spite of numerous warnings from the presiding judge of the panel that his time for oral argument had already expired, counsel continued to press his arguments in behalf of Rogers. When he again quoted Judge Lipkin as saying at the end of the bankruptcy trial that he (Judge Lipkin) did not want to hear any more about the case, the presiding judge of this panel was prompted to advise Rogers' counsel that this court felt the same way, as the time allotted for oral argument had been greatly exceeded. It may appear, therefore, to Rogers' counsel that he had the same problem in this court as he did in the bankruptcy court, but there was a difference, however, as in this court it was done for a good and obvious reason and was done in a much lighter vein. We note the long-standing practice in this and other circuits of notifying, well in advance, the parties of the time they have been allotted for oral argument and strictly enforcing the announced time limits. Here the time allotted and announced was leniently, not strictly, enforced and counsel was permitted to exceed his allotted time by a substantial amount. See Practitioner's Handbook for Appeals to the United States Court of Appeals for the Seventh Circuit 55 (1987); Cir.R. 34(b)(1)