In re Alan BERNARD; Linda
Bernard, Debtors.

Alan BERNARD; Linda Bernard,
Plaintiffs–Appellants,

v.

Jeffrey·C. COYNE, Chapter 7 Trustee;
Clement Sheaffer; Mary Sheaffer,
Defendants–Appellees.

No. 93–55255.

United States Court of Appeals,
Ninth Circuit.

July 29, 1994.

Richard M. Moneymaker, Moneymaker &
Kelley, Los Angeles, CA, for plaintiffs-appellants.

William C. Sias, Epstein Becker & Green,
Jamie R. Schloss, Los Angeles, CA, for defendants-appellees.

## ORDER

KOZINSKI, Circuit Judge.

The parties to this appeal are the Bernards, debtors in a Chapter 7 bankruptcy proceeding pending in the Central District of California; creditors Clement and Mary Sheaffer; and Jeffrey C. Coyne, the Chapter 7 trustee. The central question presented in the case (which will not be answered here) is whether the trustee's objection to certain exemptions claimed by the debtors was timely.

Shortly after oral argument on June 8, 1994, the Bernards filed a motion asking that I disqualify myself under 28 U.S.C. § 455,[1] based on the fact that I am married to Marcy J.K. Tiffany, who is the United States Trustee for the Central District of California.[2]

## 1. Who Rules on the Motion?

The initial decision whether or not to sit in a case rests with the individual judge. Under the canons of judicial ethics, every judicial officer must satisfy himself that he is actually unbiased toward the parties in each case and that his impartiality is not reasonably subject to question. To assist judges in carrying out this bias-check the parties are required to list those entities that have an interest in the case. See Fed.R.App.P. 26.1 & advisory committee's note. For the same reason, judges must file yearly financial disclosure reports, listing the entities in which they have an interest. 5 U.S.C. app. §§ 101–102. The court also has various internal mechanisms—invisible to the litigants—to reduce the risk of conflict. For example, a judge may give the clerk of court a list of parties in whose causes he may not sit; the assignment of cases is then monitored to ensure that the judge is not assigned to cases involving those parties. If a judge notices a conflict in a case already assigned to him, he usually removes himself long before the parties learn of the assignment.

Despite these precautions, parties occasionally come to believe that a judge who has not disqualified himself should do so. They are entitled to file a motion for disqualification, as the Bernards have done here. Such a motion is filed in the case docket and referred to the full panel. However, the somewhat surprising (and not entirely comfortable) reality is that the motion is addressed to, and must be decided by, the very judge whose impartiality is being questioned. See, e.g., United States v. Sibla, 624 F.2d 864, 868 (9th Cir.1980); United States v. Balistrieri, 779 F.2d 1191, 1202–03 (7th Cir.1985) ("Section 455 clearly contemplates that decisions with respect to disqualification should be made by the judge sitting in the case, and not by another judge."). Neither section 455, nor the Federal Rules of Appellate Procedure, nor our local rules contain a mechanism for referring disqualification motions to someone else.[3] See Schurz Communications, Inc. v. FCC, 982 F.2d 1057 (7th Cir. 1992) (Posner, J.) (other judges on panel decline to consider petition to disqualify third judge). Like it or not, therefore, the responsibility for ruling on the Bernards' motion devolves on me alone.

## 2. Do I Disqualify Myself?

The Bernards contend that my impartiality is subject to question because my wife has a stake in the outcome of the proceedings. In support of this claim they argue that my wife

---

1. Section 455 provides:

   (a) Any ... judge ... shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
   (b) He shall also disqualify himself in the following circumstances:

   .    .    .    .    .

   (4) He knows that he ... or his spouse or minor child ... has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;
   (5) He or his spouse ...
   (ii) Is acting as a lawyer in the proceeding;
   (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding

   ....

   28 U.S.C. § 455(a)–(b). No motion is required to precipitate a judge's recusal under section 455. See Davis v. Board of Sch. Comm'rs of Mobile County, 517 F.2d 1044, 1051 (5th Cir.1975); 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3550 (1984). Parties may however, raise the issue by motion. See Klenske v. Goo (In re Manoa Fin. Co.), 781 F.2d 1370, 1373 (9th Cir.1986) (per curiam) ("Though section 455 is stated in terms of a self-enforcing obligation upon the judge, it may be invoked by a party.").

2. The United States Trustee is an officer of the Department of Justice, appointed by the Attorney General pursuant to 28 U.S.C. § 581.

3. By contrast, if a party files an affidavit properly alleging prejudice on the part of a district judge under 28 U.S.C. § 144, the judge must turn the matter over to a colleague. But section 144 applies only to district judges, not appellate judges. See id. ("proceeding in a district court") (emphasis added); Pilla v. American Bar Ass'n, 542 F.2d 56, 58 (8th Cir.1976) (section 144 doesn't apply to federal appellate judges).

is Mr. Coyne's supervisor and therefore has an interest in the outcome of the case. They also point out that, by statute, the U.S. Trustee may herself participate as a party in every bankruptcy case; this potential participation, the Bernards argue, is enough of an interest to require my recusal.

■ Section 455 requires not only that a judge be subjectively confident of his ability to be evenhanded, but also that an informed, rational, objective observer would not doubt his impartiality. *United States v. Winston*, 613 F.2d 221, 222 (9th Cir.1980). After careful examination of the circumstances of this case, I have determined that my wife's position as U.S. Trustee does not affect my impartiality, as I do not feel any bias for or against any of the parties here.

The question of appearances is more difficult; human nature being what it is, we would all like to believe that no objective observer would ever doubt our impartiality. *See SCA Servs., Inc. v. Morgan*, 557 F.2d 110, 116 (7th Cir.1977) ("Because a judge must apply the standard [of section 455] both as its interpreter and its object, the general standard is even more difficult to define. [There is a] philosophical dilemma created by this objective-subjective conundrum...."). Fortunately, there is a source of objective advice for federal judges confronting sensitive disqualification questions. The Judicial Conference of the United States has established a committee, consisting of federal judges, "[t]o provide advice on the application of the Code of Conduct for United States Judges." Jurisdictional Statement of the Committee on Codes of Conduct of the Judicial Conference of the United States. Although judges are neither required to consult the committee nor bound by its rulings, the committee provides invaluable guidance and a detached viewpoint.

Mindful of the possibility that an objective observer might question my participation in this appeal, I wrote to the Committee on Codes of Conduct on April 28, 1994. I advised the committee of the role played by the United States Trustee in bankruptcy cases, and particularly in those brought under Chapter 7 of the Code. I noted that the U.S. Trustee and her staff are routinely involved in the administration of all Chapter 7 cases. The U.S. Trustee screens a panel of potential Chapter 7 trustees, 28 U.S.C. § 586(a)(1), and is responsible for the assignment of panel members to individual cases, although the trustee is formally appointed by the bankruptcy court. The U.S. Trustee sets guidelines for Chapter 7 trustees, but she has no control over the legal positions taken in a case by an individual trustee. Once appointed, a Chapter 7 trustee can be removed from a case only by order of the bankruptcy court. 11 U.S.C. § 324. The U.S. Trustee can, however, remove or suspend trustees from the panel for performance or other reasons.

I also noted that, from time to time, the U.S. Trustee's office participates substantively in individual cases. The U.S. Trustee can "convene and preside at" the initial creditors' meeting (the "341(a) meeting"). 11 U.S.C. § 341(a); Fed.R.Bankr.P. 2003(a). She may herself serve as the trustee in a case, 28 U.S.C. § 586(a)(2), although she rarely does. She may also intervene and appear at any level of the proceedings from the bankruptcy court on, 11 U.S.C. § 307, as either a party or an amicus. Because the U.S. Trustee has no control over the legal positions taken by the Chapter 7 trustee, she occasionally takes positions before the court that are different from those of individual trustees.

On May 27, 1994, the Committee on Codes of Conduct responded to my inquiry. Commenting on the U.S. Trustee's supervisory role over Chapter 7 trustees, the committee focused on the

> difference between supervisory control which is clerical as opposed to supervisory control which is discretionary. Clerical matters include the issuance of operating instructions to the debtors, the appointment of creditors committees, etc.

> These ... perfunctory administrative tasks ... involve the United States Trustee in such a tangential way that you would not be required to recuse.

The committee then noted two circumstances where recusal would be advised. First, it wrote that

> [u]nder ... circumstances where the United States Trustee is actually a party or

where she has chosen to appear as amicus, we agree with your conclusion that you should recuse yourself.

Second, the committee advised that "in a high profile case involving your wife which could significantly aid or hinder her career, you would naturally be required to recuse."

█ I am persuaded by the committee's analysis, and conclude that I need not disqualify myself. The Bernards' case is a low-profile case where the U.S. Trustee's office has performed only routine administrative functions. *Compare* Katrina M. Dewey, *Moral Bankruptcy*, California Lawyer, July 1994, at 35. Although the U.S. Trustee is required to convene and preside at the 341(a) meeting, 11 U.S.C. § 341(a), she may assign these functions to a designee. *See id.* § 102(9) (" 'United States trustee' includes a designee of the United States trustee"). The Bernards don't allege that anyone from the U.S. Trustee's office actually conducted the 341(a) meeting in this case; instead, the Chapter 7 trustee was automatically designated and presided at the meeting. The Bernards don't allege that the U.S. Trustee or her staff have been involved in the case in any other substantive way, nor does the record disclose any such involvement.

The Bernards cite a memorandum from the U.S. Trustee to all Chapter 7 trustees as evidence of her direct involvement in their activities.[4] The administrative or managerial interest expressed in the memorandum is not the sort of substantive involvement in a particular case the committee suggested might warrant my recusal. Instead, it is precisely

what the committee described as "clerical" supervisory control.

█ The Bernards also make what I understand to be a formalistic argument in support of their disqualification motion. They argue that because their brief, as well as that of the trustee, listed Marcy J.K. Tiffany as an interested party, everyone is estopped from denying that she is. Not so. Parties are encouraged to err on the side of caution in listing who might be deemed to be an interested party. Judges can then make a fully informed decision whether that party is indeed interested and, if so, whether the interest is such as to require the judge's disqualification. The information provided in the certificate of interested parties is thus the beginning of the analysis, not the end. If disqualification is not otherwise called for, the fact that someone is identified as an interested party in the briefs has no independent significance.

In seeking the advice of the Committee on Codes of Conduct, I mentioned that my wife's name is sometimes listed in the certificate of interested parties, and is included on the service list in all bankruptcy cases pending in the Central District of California. I noted that parties often carry the service list forward on appeal without removing her name. In its response, the committee agreed that what matters is *actual* participation in the case by my wife or her staff, rather than any formal designation by the parties.

Accordingly, I conclude that my initial decision not to disqualify myself was correct.

---

4. Because most readers will not have the Bernards' motion, I quote here a bit of the memorandum to give a sense of its content:

July 22, 1992
MEMORANDUM
TO: ALL PANEL TRUSTEES
FROM: MARCY J.K. TIFFANY UNITED STATES TRUSTEE
RE: NEW UNITED STATES TRUSTEE PROGRAM POLICIES REGARDING CHAPTER 7 OVERSIGHT

The review of trustees will be conducted by newly established evaluation teams composed of an attorney and a paralegal. Each trustee will be assigned to a particular team, which will be responsible for reviewing and evaluating the trustee in each of the areas discussed below.

8. Section 341 Meetings
Periodically, a member of the trustee's assigned evaluation team will attend a meeting of creditors to evaluate whether the trustee asked appropriate questions, identified irregularities in petitions, and imposed necessary follow up deadlines.
9. Pleadings
The evaluation team will periodically review the trustee's pleadings for timeliness, sufficiency, necessity and the trustee's demonstrated level of knowledge and compliance with United States Trustee policies.

### 3. Should I Impose Sanctions?

■ Both the trustee and the Sheaffers, major creditors who have chosen to participate in this appeal, vigorously opposed the motion to disqualify. The Sheaffers argue that the motion is untimely and was brought in bad faith; they ask for sanctions amounting to the attorneys' fees they have expended in opposing the motion.[5]

The Sheaffers make two arguments in support of their request for sanctions. The first is that the motion is untimely because it was not brought until after oral argument. They suggest that the Bernards' counsel waited to see how his argument would be received and, being unhappy with the questions he was asked, decided he might be better off with another judge.[6] Second, the Sheaffers argue that the Bernards' counsel is improperly impugning my integrity in the hope of manufacturing bias or the appearance thereof where none was there to begin with.

There is certainly something to the Sheaffers' timing argument. The names of the judges to whom a case will be submitted for decision are available from our clerk's office on the Monday preceding the week of oral argument. In this case, the names were made public on May 30th, 9 days before oral argument on June 8th. While counsel are not required to avail themselves of this information, competent lawyers make a point of knowing the panel before whom they will be arguing, if only to familiarize themselves with

opinions those judges may have written on issues pertinent to the case. Identifying a possible conflict of interest is yet another reason for learning the names of judges at the earliest possible time. Nevertheless, we do not require counsel to learn the names of the judges, and counsel for the Bernards, Richard Moneymaker, has declared under penalty of perjury that he did not know the identity of the judges who would hear this case until the day of oral argument. Surprising as this is, given counsel's many years of experience in the courts of this circuit, I have no basis for doubting his representation. Where counsel did not have the information supporting the disqualification motion until the time of oral argument, there is no basis for imposing sanctions based on the timing of the motion.[7]

I must also reject the Sheaffers' second argument. A motion to disqualify does not impugn the integrity of the judge whose impartiality is being questioned. As noted, section 455 has both a subjective and an objective component, and the Bernards have never suggested that I am subjectively biased against them.[8] They argue only appearances, that my impartiality might reasonably be questioned in light of my wife's well-known participation in bankruptcy cases in the Central District of California. While I have rejected this argument, it is not frivolous, as witnessed by my decision to write to the Committee on Codes of Conduct long before the Bernards filed their motion.

---

5. Because I find that the Bernards' motion is not frivolous, I needn't address whether sanctions for frivolous motions may be imposed under Fed. R.App.P. 38 or 28 U.S.C. § 1912.

6. The Senate Judiciary Committee warned of section 455's potential for misuse:

[I]n assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision.... Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice.

S.Rep. No. 419, 93d Cong., 1st Sess., at 5 (1973).

7. The Sheaffers also argue that the Bernards should have made the motion for disqualification orally as soon as they learned the identity of the panel. Counsel for the Bernards responds reasonably enough that he was nonplused by seeing me on the panel, and wanted to verify that my wife was still the U.S. Trustee before moving for my recusal.

8. Even if the Bernards *had* impugned my integrity, it is far from clear that this would be grounds for sanctions. Parties and their counsel are entitled to question the impartiality of the judges before whom they appear, see, e.g., 28 U.S.C. § 144, and judges have a professional responsibility not to take such challenges personally. Service as a public official means that one may not be viewed favorably by every member of the public. Federal judges have the extraordinary protections of life tenure to shield them from such pressures.

Counsel for a party who believes a judge's impartiality is reasonably subject to question has not only a professional duty to his client to raise the matter, but an independent responsibility as an officer of the court. Judges are not omniscient and, despite all safeguards, may overlook a conflict of interest. A lawyer who reasonably believes that the judge before whom he is appearing should not sit must raise the issue so it may be confronted and put to rest. Any other course would risk undermining public confidence in our judicial system.

The papers filed by the Bernards seeking my disqualification fall squarely within the range of professionally appropriate conduct, as do the opposition papers filed by the trustee and the creditors. While it is regrettable that this has necessitated the expenditure of money and attorneys' time, there is no basis for shifting the entire cost to the Bernards. The order in this case is being published in the hope of avoiding such expenses in future cases by articulating the standards governing my participation in bankruptcy cases from the Central District of California so long as my wife is the U.S. Trustee there.

Accordingly, the motion for disqualification is DENIED, as is the Sheaffers' motion for sanctions.