| Date of Promissory Note | Amount Borrowed | Annual Percentage Rate |
| --- | --- | --- |
| **WHEAL loans** | | |
| November 8, 1983 WHEAL Loan | $15,000.00 | 13.106% Before repayment begins 11.75% After repayment begins |
| September 28, 1984 WHEAL Loan | $20,000.00 | 14.931% Before repayment begins 18,633.33% After repayment begins |
| September 27, 1985 WHEAL Loan | $20,000.00 | 13.547% Before repayment begins 11.00% After repayment begins |
| **SLMA loans** | | |
| December 16, 1983 SLMA HEAL Loan | $ 4,855.00 | Variable rate |
| August 30, 1986 SLMA HEAL Loan | $18,990.00 | Variable rate |

**In re Vinicio Medrano DIAZ, Debtor.**

**Vinicio Medrano DIAZ, Plaintiff,**

v.

**Teresa Vazquez BOTET, etc., Defendant.**

**Bankruptcy No. B–92–07589(SEK).**
**Adv. No. 93–0010(ESL).**

United States Bankruptcy Court,
D. Puerto Rico.

June 1, 1995.

Vinicio Medrano Diaz, pro se.

### OPINION AND ORDER

ENRIQUE S. LAMOUTTE, Chief Judge.

Before the court is an Affidavit (docket No. 105) filed by debtor Vinicio Medrano Diaz wherein it is alleged that the undersigned has a relationship with particular parties in this action and, as a result, recusal is warranted in order that debtor's due process rights "to have an impartial Judge" are not violated.[1] Debtor asserts that partiality results because the undersigned is a Colonel and defendant Orlando Gonzalez Hernandez, Esq. is a Major in the Puerto Rico Air National Guard (PRANG)[2] and defendant Pablo Yamamoto is an employee at the commissary located at Muniz Air National Guard Base, Carolina, Puerto Rico. Debtor con-

---

1. This document was mistakenly filed by debtor in the legal case currently before the Hon. Sara De Jesus, however, as it concerns the undersigned who presided over the trial in the related adversary case No. 90–0010, a copy of the document was filed in the adversary case. *See* Case No. 92–07589, docket No. 179.

2. Actually, defendant Gonzalez is a Lieutenant Colonel and the undersigned is a Major.

cludes that these alleged relationships caused "bias and prejudice" as exemplified by the court's ruling which includes the "unsubstantiated" use of the adjective "bon vivant" when describing debtor.

## FACTS

The matters raised by plaintiff in his petition do not speak to the merits of the case, therefore, we include only a brief citation of the history in order to sufficiently orient the reader. A two day trial was held in adversary case No. 93–0010 on November 21 & 22, 1994. *See* docket Nos. 78 & 79. The threshold issue at trial was whether debtor had agreed to split the proceeds of a lottery prize, to be paid over a period of fifteen years, with defendant Teresa Vazquez Botet.[3] The evidence presented included several written instruments executed by the parties and notarized by defendant Orlando Gonzalez Hernandez, Esq. Plaintiff alleged that these were not valid and/or binding as his consent was obtained through fraud and deceit by defendants Vazquez and Gonzalez.

In addition, plaintiff alleged that Vazquez succeeded in gaining control of debtor's real estate business, Better Family Homes, Inc., through fraud and deceit. Allegedly, Vazquez did this with the assistance of defendant Gonzalez who served as legal advisor to plaintiff and who executed several legal documents to a transaction between Vazquez and plaintiff for the transfer and eventual sale of property. In addition, plaintiff also implicated defendant Pablo Yamamoto, a janitor, who was instructed to sign, in the capacity of sub-secretary, a property deed executing the transfer of real property by plaintiff to the corporation.[4]

At the completion of the evidence, a ruling was issued from the bench in favor of defen-

dant Vazquez. In addition, plaintiff's claims against defendants Gonzalez and Yamamoto were dismissed for lack of evidence to substantiate the allegations. Costs and fees were awarded to defendants. Currently, a Motion to Set Aside Judgment Under Rules 59 and 60(a) ... (docket No. 91) by debtor is pending resolution.

## DISCUSSION

Plaintiff states that the undersigned's alleged relationships with defendants Gonzalez and Yamamoto supports a finding of partiality and, therefore, disqualification is warranted. In addition, plaintiff avers bias and prejudice allegedly supported by the undersigned's descriptive use of "bon vivant" in relation to plaintiff's lifestyle. Plaintiff filed an affidavit relying upon 28 U.S.C. §§ 144 & 455.

■ The first matter we address is the question of timeliness of plaintiff's objections. On the first day of trial, the undersigned questioned defendant Yamamoto before all parties and prior to the presentation of evidence. During this brief exchange, it was disclosed that Mr. Yamamoto was a civilian employee at Muniz Air National Guard Base and that no relationship existed between the defendant and the undersigned. *See* Trial Transcript 15:20 to 16:5.

In addition, in a previous exchange during a pretrial proceeding, it was disclosed that defendant Gonzalez was an officer of PRANG.[5] Further, it was pointed out that the undersigned's and defendant's National Guard assignments did not result in contact between the two and that no personal relationship existed. At the time of these disclosures, plaintiff failed to raise any objections or express any concerns.[6]

---

3. The relationship between the plaintiff and defendant Vazquez took many different variations during the period of time pertinent to this dispute. Vazquez was initially an employee at Better Family Homes. Thereafter, an intimate relationship developed between her and plaintiff. Subsequent to plaintiff's winning the lottery, they were married. The marriage ended the following year with a divorce.

4. Plaintiff also included defendant Francisco Rivera Deglans, an accountant and business coun-

selor at Better Homes, in his Complaint. These claims were withdrawn prior to trial.

5. This exchange was not recorded and plaintiff's counsel was present.

6. While not addressed by plaintiff, it is interesting to note that it was further disclosed at the same pretrial proceeding that Carlos Rodriguez Quesada, plaintiff's counsel in the Bankruptcy Case, was also a Major in PRANG.

Particular grounds for recusal can be deemed waived where disclosure of facts allegedly supporting such averments was made and the party failed to raise the objection in a timely manner.[7] The following factors have been utilized to determine whether a motion for disqualification is timely filed: 1) the extent of movant's involvement in the proceeding; 2) whether recusal would result in waste of judicial resources; 3) whether the motion was made after entry of judgment; and, 4) whether movant can demonstrate good cause for delay. *In re Cooke*, 160 B.R. 701, 704 (Bankr.D.Conn.1993); *Delesdernier v. Porterie*, 666 F.2d 116, 121–123 (5th Cir.), *cert. denied*, 459 U.S. 839, 103 S.Ct. 86, 74 L.Ed.2d 81 (1982).

Applying these factors to this case, plaintiff's delay in petitioning the court substantiates waiver of his objections. While the associations between the undersigned and defendants Gonzalez and Yamamoto were disclosed by the court prior to the presentation of evidence, plaintiff did not raise any objection until the conclusion of the trial and the issuance of an adverse ruling. In addition, no explanation was provided by plaintiff for the delay is raising these objections.

Such delay in taking action surely results in a waste of judicial resources and can only be seen as plaintiff's attempt to take a second bite of the proverbial apple, that is, to manipulate the judiciary in order to avoid the consequences of an adverse judgment. *In re Allied–Signal Inc.*, 891 F.2d 967, 971 (1st Cir.1989), *cert. denied*, *ACW Airwall, Inc. v. United States District Court for the District of Puerto Rico*, 495 U.S. 957, 110 S.Ct. 2561, 109 L.Ed.2d 744 (1990). This is clearly not the intended result of the statute. *See, also, Delesdernier*, 666 F.2d at 121 (§ 455 was not enacted by Congress to make a game federal judiciary ethical obligations; the integrity of the statute must be maintained by discouraging bad faith manipulation of its rules for litigious advantage) & H.R.Rep. No. 1453, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 6351, 6355 ("it has been wisely observed that each judge must be alert to avoid the possibility that those who would question his impartiality are in reality seeking to avoid the consequences of his expected adverse decision ...").

The conclusion that plaintiff's allegations substantiating recusal pursuant to § 455(a) are effectively waived due to untimely filing is fully supported. *Matter of Muller*, 851 F.2d 916, 918–919 (7th Cir.1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1645, 104 L.Ed.2d 160 (1989) (allegations of bias based on comments made by the judge in the preliminary proceeding raised subsequent to the entry of an adverse judgment are late and deemed waived). However, even if we were to deem plaintiff's petition as timely, it fails on the merits.

Initially, it is important to note that plaintiff's argument is defective insofar that he relies upon § 144. While the protection offered by §§ 144 and 455 overlap, *Liteky v. United States*, —— U.S. ——, ——, 114 S.Ct. 1147, 1153, 127 L.Ed.2d 474 (1994), it is well settled that the former applies only to district judges excluding all other judiciary officers.[8] *See In re Norton*, 119 B.R. 332, 334–35 (Bankr.N.D.Ga.1990) and the cases cited therein. *See, also, In re Casco Bay Lines, Inc.*, 25 B.R. 747, 757 (1st Cir. BAP 1982). Section 455 of title 28 imposes an affirmative duty upon all judges to independently evaluate any facts which may cast doubt upon

---

7. Section 455(e) provides:

   **No justice, judge, or magistrate shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver is accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.**

8. Section 455(b)(1) primarily mirrors those protection provided under § 144 in that both require

recusal where actual bias or prejudice is present. *Liteky*, —— U.S. at —— – ——, 114 S.Ct. at 1153–54.

   Title 28 U.S.C. § 144 states, in pertinent part:

   **Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.**

impartiality.[9] *Taylor v. O'Grady,* 888 F.2d 1189, 1200 (7th Cir.1989). Accordingly, a judge whose impartiality is being questioned is responsible for the deciding the issue in the first instance. *In re Bernard,* 31 F.3d 842, 843 (9th Cir.1994). However, while these protection are self-executing by a judge, parties to the action may raise the issue by motion or affidavit. *United States v. Conforte,* 624 F.2d 869, 880 (9th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980).

The purpose of § 455 is to foster impartiality as well as assure the appearance of justice. *Parker v. Connors Steel Co.,* 855 F.2d 1510, 1523 (11th Cir.1988), *reh'g denied,* 864 F.2d 795, *cert. denied,* 490 U.S. 1066, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989). Analysis thereunder requires balancing of two, sometimes competing, policies. *U.S. v. Burger,* 964 F.2d 1065, 1070 (10th Cir.1992). First, a judge is duty bound to disqualify himself when warranted in order to insure the appearance of justice and foster and preserve public confidence in the judiciary. Second, the judge has the duty to sit where the facts do not substantiate recusal, thereby, preventing parties of interest from manipulating the system utilizing this provision. *Allied–Signal,* 891 F.2d at 970. *See, also, In re Drexel Burnham Lambert Inc.,* 861 F.2d 1307, 1312 (2nd Cir.1988), *reh'g denied,* 869 F.2d 116, *cert. denied, Milken v. S.E.C.,* 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989).

The First Circuit has articulated various factors for consideration when disqualification of a judge is sought. These include the following: 1) a charge or partiality must be supported by a factual basis; 2) disqualification is appropriate only if the facts, viewed by an objective and knowledgeable person, would result in reasonable questioning of the judge's impartiality; and, 3) the district judge has a range of discretion in making the determination of whether disqualification is warranted. *Allied–Signal,*

891 F.2d at 970 (recusal should not be granted where the reasons cited are unsupported, irrational or constitute highly tenuous speculation (citing *In re United States,* 666 F.2d 690, 695 (1st Cir.1981))).

Disqualification based on the appearance of partiality is determined by application of an objective test. *Liteky,* —— U.S. at ——, 114 S.Ct. at 1153–1154; *Lunde v. Helms,* 29 F.3d 367, 370 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1111, 130 L.Ed.2d 1076 (1995). The statute not only requires that the judge be subjectively confident in his ability to be fair, but that there is no basis upon which an informed, rational and objective observer could reasonably question a judge's impartiality. *Bernard,* 31 F.3d at 844; *Yagman v. Republic Insurance,* 987 F.2d 622, 626 (9th Cir.1993). Accordingly, it is crucial that the facts which might cause a reasonable observer to question impartiality are identified. *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 865, 108 S.Ct. 2194, 2205, 100 L.Ed.2d 855 (1988).

Where it is reasonable to question impartiality based on the nature of the relationship between a judge and another interested party, recusal is warranted. *Liljeberg,* 486 U.S. at 859–61, 108 S.Ct. at 2202–03 (appearance of impropriety substantiates disqualification even though the judge lacked actual knowledge of his proprietary interest at the time of the ruling). However, the mere fact that a relationship exists, without more, does not *per se* require disqualification. *See, e.g., Lunde,* 29 F.3d at 370–71 (judge's impartiality is not reasonably questioned where the judge attended and graduated from the university named as a party in the case and made financial contributions to the alumni and participated in educational programs) & *Brody v. President & Fellows of Harvard College,* 664 F.2d 10, 11 (1st Cir. 1981), *cert. denied, Brody v. President & Fellows of Harvard College,* 455 U.S. 1027,

---

9. In pertinent part, 28 U.S.C. § 455 states that:
(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; ...

102 S.Ct. 1731, 72 L.Ed.2d 148 (1982) (judge's prior attendance or graduation from defendant university in an age discrimination suit is insufficient to warrant disqualification).

When previously considering the question in the District of Puerto Rico, the First Circuit observed that the Puerto Rican legal community is "so small" that it is not uncommon and inevitable that relationships exists between its members and/or that members know each other at least by reputation. *Allied–Signal*, 891 F.2d at 971–972. The Court noted that where the potentially biasing situation is a common occurrence, it is less easily avoided. Accordingly, applying the objective person test, the court noted that the knowledgeable observer is **less likely** to perceive partiality arising from those common circumstances; because the circumstance is so common, the appearance is less significant within the confines of the test. *Allied–Signal*, 891 F.2d at 971.

Utilizing the standard above, it is clear that plaintiff's allegations do not substantiate disqualification due to alleged relationships between the defendants and the undersigned. The single basis for this allegation is that both the undersigned and defendant Gonzalez are officers in PRANG. However, since we are neither in the same chain of command nor personal friends, this common membership simply does not foster nor support contentions that the undersigned is partial as a result thereby. Even less grounds exist to deduce that there is a relationship between defendant Yamamoto and the undersigned which could result in bias and prejudice against plaintiff. Here, the alleged relationship is reduced to mere recognition of Mr. Yamamoto by the undersigned as someone who works at the commissary at Muniz Air National Guard Base. There has never been any interaction between defendant and the undersigned.

Prior association with parties of interest, without more, does not create a reasonable basis for questioning judge's impartiality. *Maier v. Orr*, 758 F.2d 1578, 1583 (Fed.Cir. 1985). Even without taking into consideration the special circumstances in the District Court of Puerto Rico observed by the First Circuit in *Allied–Signal*, plaintiff's allegations are not adequately substantiated by facts sufficient to cause an objective observer to reasonably question impartiality of the undersigned. To grant the motion based on the transparent arguments provided by plaintiff, rather than a factual basis, directly refutes policy considerations thereby allowing plaintiff to avoid adverse decisions by alleging the slightest hint of suspicion. *United States*, 666 F.2d at 695, footnote* (rejecting the application of the "Caesar's wife" standard of mere suspicion).

Next we address plaintiff's averment that the undersigned should recuse himself because of bias and prejudice allegedly supported by use of the adjective "bon vivant" when describing plaintiff. Relying upon Webster, bon vivant is defined as "a person having cultivated, refined, and sociable tastes esp. in respect to food and drink." *Webster's Ninth New Collegiate Dictionary*, p. 167 (1986). In the court's estimation and as will become clear from the evidence discussed below, the definition arguably borders on flattery. In any case, it is unlikely that the use of this adjective, in itself, is pejorative to the extent that partiality can be alleged. However, in order to stave off all doubts, the court will complete the analysis within the standards dictated by § 455.

The Supreme Court has determined that a judge's remarks made during judicial proceedings which are critical or disapproving, or which may be hostile to parties or counsel, are not ordinarily sufficient to challenge partiality unless these reveal the inability to make a fair judgment. *Liteky*, —— U.S. at ——, 114 S.Ct. at 1157 (a judge's ordinary efforts at courtroom, administration, even though short tempered or stern, remain immune). *See, also, In re Yagman*, 796 F.2d 1165, 1179–80 (9th Cir.1986) (bias is not substantiated where counsel and judge engaged in hostile exchanges during trial apparently due to counsel's lack of preparation).

Accordingly, bias or prejudice does not serve as a basis for recusal where adverse opinions or ill disposition toward a party is properly acquired in the course of

the proceedings and the knowledge gained thereby. *Liteky,* —— U.S. at ——, 114 S.Ct. at 1155 & *United States v. Gordon,* 634 F.2d 639, 641 (1st Cir.1980). However, where a judge's alleged bias and prejudice are derived from extrajudicial sources and these effect his opinion on the merits, disqualification is substantiated. *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966).

■■■ Furthermore, judicial rulings alone rarely constitute a valid basis for recusal. *Grinnell,* 384 U.S. at 583, 86 S.Ct. at 1710. Rather, they are properly considered grounds for appeal. *Liteky,* —— U.S. at ——, 114 S.Ct. at 1157. However, a judge's predisposition toward or against a party can be characterized as impermissible bias or prejudice if it is so extreme as to make it impossible for the judge to render a fair judgment. *Liteky,* —— U.S. at ——, 114 S.Ct. at 1155, citing *Davis v. Board of School Commissioners of Mobile County,* 517 F.2d 1044, 1051 (5th Cir.1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976).

The court's opinion of plaintiff, as revealed by the its description, is firmly supported by the evidence presented. Plaintiff's own testimony is peppered with numerous instances of time spent imbibing, strongly indicating that social drinking was an important and frequent occurrence in his life. See, e.g., Trial Transcript 69:2–3, 72:5, 73:23–25, 74:20–21, 76:5–6, 87:3–4, 87:19–21, 89:15–16, 89:20–22, 98:4–18, 119:13–16, 162:20–21. In fact, plaintiff is an admitted alcoholic. Trial Transcript 69:5 and 11:19–11:20.

Furthermore, plaintiff's testimony clearly indicated that he pursued and enjoyed the better things in life and leisure activities that could only be associated with those financially advantaged. By way of example, testimony shows that he had deposited $800.00 on an "expensive wedding ring" for Ms. Vazquez even though he had filed for bankruptcy (Trial Transcript 68:14–68:23); that he celebrated winning by "drinking very, very heavy" from December 9 when he picked up the first installment through December 17 when he finally signed the checks for cashing (Trial Transcript 73:21–74:21); that he gave Ms. Vazquez ten thousand dollars ($10,000) for their wedding celebration on December 20, 1991 held at the exclusive and expensive Banker's Club (Trial Transcript 75:3–4 and 118:1–9); that after their wedding, plaintiff and Ms. Vazquez took two vacations (honeymoons) extending from December 20th until the middle of January (Trial Transcript 85:20–24); that subsequent to winning the prize, plaintiff took a leave of absence from his post-office announcing to his fellow workers that he was "a rich man" (Trial Transcript 88:21–22 and 73:24–25) and, that in March, 1992 he purchased a fishing boat for three thousand dollars ($3,000) (Trail Transcript 143:16–25). Contrary to plaintiff's allegations, the court's characterization of him as "bon vivant" is supported by the evidence presented rather than any alleged biases and/or prejudices.[10]

■■■ Finally, plaintiff's allegations do not substantiate Due Process violations. The Supreme Court has recognized that not every case of judicial disqualification rises to the level of a Constitutional challenge. *Aetna Life Insurance Co. v. Lavoie,* 475 U.S. 813, 820–21, 106 S.Ct. 1580, 1585, 89 L.Ed.2d 823 (1986). However, a judge's failure to recuse himself where a person's liberty or property is subject to a ruling of a court wherein the judge has a "direct, personal, substantial, pecuniary interest in reaching a decision against him" provides grounds for a valid Fourteenth Amendment claim. *Aetna,* 475 U.S. at 821–22, 106 S.Ct. at 1585, citing *Tumey v. State of Ohio,* 273 U.S. 510, 523, 47 S.Ct. 437, 441, 71 L.Ed. 749 (1927). *See, also, In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955) (the Due Process Clause prohibits a judge from sitting in his own case or where he has an interest in the outcome). While the Court has recognized that it is difficult to define a precise standard to be applied to all cases, it has firmly stated that general allegations of bias and prejudice are insufficient to establish any

---

10. Plaintiff's allegations of bias and prejudice by the presiding judge may be consonant with his persistently askewed perception of facts, that is, if the results are not those wished by plaintiff, then anyone who intervened must have conspired against him.

constitutional violation. *Aetna*, 475 U.S. at 820–21, 106 S.Ct. at 1585.

## CONCLUSION

In light of the findings herein, debtor Vinicio Medrano Diaz's petition for recusal of the undersigned pursuant to title 28 §§ 144 & 455 is hereby DENIED.

SO ORDERED.